UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────
JOSHUA LINER,
                        Plaintiff,

             -v-                                       17-CV-3215 (JPO)

COMMISSIONER OF SOCIAL                                 OPINION AND ORDER
SECURITY,
                        Defendant.
─────────────────────────────────

J. PAUL OETKEN, District Judge:

Plaintiff Joshua Liner brings this action *pro se* pursuant to the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI"). The Commissioner has now moved for judgment on the pleadings. (Dkt. No. 16.) For the reasons that follow, the Commissioner's motion is denied. The Court remands this case to the Social Security Administration for further proceedings.

**I.    Background**

   **A.    Factual Background and Medical History**

Plaintiff Joshua Liner was born in 1958 (Dkt. No. 15 ("R.") 99), and he has a tenth-grade education (R. 121). Liner alleges that his disability began, and he stopped working due to disability, on April 1, 2004. (R. 99, 120.) Prior to the onset of disability, Liner worked as a store clerk and the stocker in a warehouse. (R. 121.)

In applying for SSI, Liner listed six medical conditions that limited his ability to work: back injury, skin disorder, hernia, glaucoma, "sickle cell trait," and finger injury. (R. 120.) The Court recounts below a brief summary of Liner's medical history for these conditions, and other medical issues of which Liner has complained.

Back issues:  Liner alleges that he has had a problem with his back for about 30 years, and wears a back brace.  (R. 30, 33.)  He has reported back pain to medical providers on multiple occasions.  (R. 176, 179.)  An x-ray of Liner's back on October 11, 2013, revealed "no evidence of fracture or dislocation."  (R. 205.)  But the x-ray showed "disc space narrowing . . . with a vacuum disc" which the doctor opined was "most probably on the basis of either disc degeneration or herniation."  (R. 205.)  Starting in December 2013 Liner underwent six sessions of physical therapy to address his lower back pain.  (R. 208–13, 215–16.)

Leg issues:  In addition to back pain, at various points Liner has complained about pain in his legs.  (R. 172–74, 212–13, 252–54, 256.)  In October 2013, his left leg was evaluated and determined to have full range of motion and no problems with ambulation.  (R. 174.)  On December 10, 2013, Liner's right leg was x-rayed and the tibia and fibula bones were found to contain "no fracture, dislocation or other bony abnormality."  (R. 204.)  On December 23, 2013, the day after Liner went to the emergency room complaining of pain in his left leg and was observed to walk with a limp, medical staff noted that Liner "ambulate[d] without any problem" and "no pathology [was] found."  (R. 171.)

Liner went to the emergency room with complaints of pain and swelling in his legs twice in June 2014.  (R. 252–54, 256.)  He was found to have "lower legs with pitting edema" and "several tortuous superficial veins," and was diagnosed with "[p]eripheral vascular disease."  (R. 253, 256.)  Medical staff scheduled a follow-up appointment for Liner, and instructed him to elevate his legs and wear supportive stockings.  (R. 255.)

A vascular ultrasound performed July 8, 2014, revealed "[n]o evidence of thrombosis, occlusion or significant stenoses," and "[n]o significant venous insufficiency."  (R. 250, 296.)  In

an exam on November 4, 2014, a physician documented that Liner had full strength and movement in his extremities. (R. 287.)

Finger injury: On May 1, 2014, Liner went to the emergency room to address pain and swelling in his right hand (R. 229–30, 238–47), which Liner alleges was injured in an assault (R. 31–32). An x-ray showed that one of the joints on the third finger of Liner's right had had been dislocated, but there was no fracture. (R. 230.) Doctors restored the alignment of the joint (R. 229), and Liner demonstrated a full range of motion in the affected finger and hand before being discharged (R. 244).

Liner returned to the emergency room on May 9, 2014 and May 22, 2014, complaining of pain and swelling in the third finger of his right hand. (R. 232, 262.) Examinations of the finger revealed swelling and "[m]ild degenerative changes" but no fracture or dislocation. (R. 228, 251.) On this third emergency room visit, Liner was diagnosed with a "[p]ossible tendon tear" and "[t]enosynovitis," and scheduled for a follow-up appointment at the hand clinic. (R. 261.)

On September 2, 2014, Liner visited the hand clinic to complain of "pain, swelling, and impaired function in [his] right hand during grasping." (R. 336.) The clinic noted some swelling, tenderness, and decreased extension in the affected finger, and referred Liner to occupational therapy for a six-week course of treatment. (R. 336.) An x-ray of the hand on September 5, 2014 revealed no fractures, dislocations, abnormalities, erosions, or degenerative changes. (R. 322.) Liner attended occupational therapy for his right hand in September 2014. (R. 339–45.)

On October 2, 2014, his physician noted that Liner reported an "improvement in pain, strength and [range of motion]," and was "able to make [a] fist" and "perform[] all [activities of daily life]." (R. 332.) Because the joint in question was still enlarged, however, Liner was

referred "for surgical options." (R. 332.) Liner's hand was examined again on November 3, 2014, and he was observed to have the ability to make a fist, no tenderness in the finger, perfect grip strength, and normal sensation. (R. 329.) The only abnormality observed was the increased size of the joint. (*Id.*) As a result of this exam, Liner was again referred to occupational therapy. (R. 329–30.)

Glaucoma: Liner has also been diagnosed with glaucoma, which has been treated with the use of eye drops. (R. 33, 163–65.) Medical providers reported in November 2012 that Liner was "currently doing well on [his] current [medication]" for his eye issues. (R. 163.) Liner was later seen by an ophthalmologist on April 16, 2015 and May 14, 2015 related to glaucoma and ocular hypertension, and his prescription for eye drops was continued. (R. 324–25.)

Left shoulder pain: On April 3, 2014, Liner went to a medical clinic to complain about pain in his left shoulder as the result of a fight a month earlier. (R. 169.) Medical staff observed a decreased range of motion in the shoulder, but no swelling. (*Id.*) In an examination on September 3, 2014, Liner was observed to have full range of motion and motor strength in his extremities. (R. 292.) On May 19, 2015, Liner went to the emergency room and complained of pain in his left shoulder. (R. 326.)

Other conditions: Liner was diagnosed with "[c]ontact dermatitis and other eczema" on November 4, 2014, after going to the emergency room to report a rash on his right arm. (R. 285.) He was treated with hydrocortisone cream. (*Id.*)

Liner alleges that he had a hernia, which was repaired. (R. 33.) However, none of his medical records in the administrative record before the Social Security Administration ("Administration") relate to this condition.

Liner also alleges that he has the "sickle-cell trait," but does not know if the trait affects him in any functional way. (R. 33.) None of Liner's medical records in the administrative record relate to this condition.

### B. Procedural History

Liner filed an application for SSI on June 23, 2014, alleging disability beginning April 1, 2004. (R. 14, 99.) His application was denied on September 8, 2014 (R. 50), and Liner requested a hearing on October 15, 2014 (R. 56).

At the request of the Administration, Dr. Peter Graham conducted a consultative internal medicine examination of Liner on June 16, 2015. (R. 308–12.) At the exam, Liner reported experiencing swelling in his legs with "prolonged standing" or at the end of the day. (R. 309.) Liner also reported experiencing intense "intermittent" and "spontaneous[]" pain in his lower back, exacerbated by "bending or lifting," as well as "intermittent" pain in his left shoulder. (*Id.*) In conducting the examination, Dr. Graham observed a full range of motion in Liner's arms and legs, normal dexterity and grip strength in Liner's hands, and a normal gait. (R. 310–11.) Dr. Graham diagnosed Liner with mild bipedal edema, low back pain without any functional deficit, and left shoulder pain without any functional deficit. (R. 311.) He opined that Liner was able to "sit, stand, walk, lift, carry, handle objects, hear, speak, and travel." (*Id.*; *see* R. 351–53.)

An administrative law judge ("ALJ") conducted a hearing on September 10, 2015, at which Liner testified about his health, job history, and habits (R. 27–39, 82). Among other things, Liner testified that his back issues cause him pain (R. 33, 38), that his feet swell up and become very painful any time he walks more than a block or two (R. 34, 38), and that he is unable to lift or carry any weight comfortably, or hold anything with his right hand (R. 36–37).

The record developed by the ALJ consisted of Liner's testimony at the hearing (R. 27–39); Liner's medical records (R. 163–307, 316–45); and the results of the consultative examination (R. 309–12, 346–55).  On September 25, 2015, the ALJ issued a decision denying Liner's application for benefits.  (R. 11.)  The ALJ concluded that Liner is not disabled within the meaning of the Social Security Act.  (R. 14, 20.)

The ALJ followed the Social Security Administration's five-step process for determining whether an individual is disabled under the SSA.  (R. 15–16.)  Under the first step, the ALJ determined that Liner had not been engaged in substantial gainful work application since the date of his application for SSI.  (R. 16.)  The ALJ proceeded to find at the second step that Liner had several medical impairments: the dislocation of the third finger on his right hand, a disc space narrowing on his spine, glaucoma, and pitting edema of the legs.  (R. 16.)  However, the ALJ determined that the combination of these impairments did not significantly limit Liner's "ability to perform basic work-related activities for 12 consecutive months," and therefore these impairments were not "severe."  (R. 16.)

Liner sought review of the ALJ's determination from the Appeals Council.  (R. 7.)  On February 24, 2017, the Appeals Council denied the request for review.  (R. 1.)  Liner initiated this action *pro se* on May 1, 2017.  (Dkt. No. 2.)  The Commissioner moved for judgment on the pleadings on September 18, 2018.  (Dkt. No. 16.)  Liner filed an affidavit opposing the motion on January 7, 2019.  (Dkt. No. 24.)

Although not officially styled as a motion for judgment on the pleadings, Liner's affidavit contends that the ALJ "commit[ted] prejudicial error," and otherwise challenges the ALJ's findings and development of the record.  (Dkt. No. 24 at 1–2.)  The Court will thus construe Liner's opposition filing as a motion for judgment on the pleadings.  *See Verdaguer v. Colvin*,

No. 12 Civ. 6858, 2013 WL 6426931, at *2 (S.D.N.Y. Dec. 9, 2013); *Connor v. Barnhart*, No. 02 Civ. 2156, 2003 WL 21976404, at *8 n.8 (S.D.N.Y. Aug. 18, 2003); *Clark v. Callahan*, No. 96 CIV. 3020, 1998 WL 512956, at *1 (S.D.N.Y. Aug. 17, 1998) (holding in the social security context that "[a]lthough a remand request is normally made by a party, there is no reason why a court may not order the remand *sua sponte*" (citation and internal quotation mark omitted)).

## II. Legal Standard

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have reached a different result upon a *de novo* review." *Downes v. Colvin*, No. 14 Civ. 7147, 2015 WL 4481088, at *6 (S.D.N.Y. July 22, 2015) (quoting *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011)).

Courts must also afford *pro se* plaintiffs "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). When a plaintiff proceeds *pro se*, the court should "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994).

## III. Discussion

To establish a disability under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability at issue must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Administration employs a five-step procedure to analyze disability determinations. The Commissioner considers whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a "severe" impairment as defined in the Administration's regulations; (3) the claimant has an impairment listed in Appendix I of the regulations; (4) the claimant has a residual functional capacity to perform her past work; and (5) there is other work the claimant could perform. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at the first four steps; the Commissioner bears the burden at the final step. *Rosa*, 168 F.3d at 77.

In this case, the ALJ determined that Liner had not carried his burden at the second step of demonstrating that he has a "severe" impairment. The Court considers below: (1) whether the ALJ properly considered Liner's testimony and description of his symptoms; (2) whether the ALJ's severity findings were supported by substantial evidence; and (3) whether Liner raises any other meritorious objections to the denial of his SSI application.[1]

---

[1] Liner does not specifically argue that the ALJ's findings are not supported by substantial evidence, or that the ALJ erred in discounting Liner's description of his symptoms. (*See* Dkt. No. 24.) Nevertheless, the Court considers these questions in order to assess whether the Commissioner is entitled to judgment on the pleadings. *See Mancebo v. Comm'r of Soc. Sec.*, No. 16 Civ. 6400, 2017 WL 4339665, at *2 (S.D.N.Y. Sept. 29, 2017) ("Even where a motion for judgment on the pleadings is unopposed, the Court must still review the entire record and ensure that the moving party is entitled to judgment as a matter of law.").

### A. Consideration of Claimant's Statements

At the second step in making a disability determination, an ALJ considers "the medical severity" of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does "not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement," the ALJ will find that the claimant is not disabled. *Id.* An impairment is "severe" if it "significantly limits [the claimant's] physical and mental ability to do basic work activities." *Id.* § 404.1520(c).

Particularly significant in this case, a claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether [his] impairment or combination of impairment(s) is severe." *Id.* § 404.1529(d)(1). In making a disability determination, however, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Barry v. Colvin*, 606 F. App'x 621, 622–23 (2d Cir. 2015) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).

ALJs are required "to follow a two-step process to evaluate a plaintiff's contention of pain" and other symptoms. *Melendez v. Astrue*, 630 F. Supp. 2d 308, 318 (S.D.N.Y. 2009) (citing 20 C.F.R. § 416.929(c)(3) & Social Security Ruling 96-7p, 61 Fed. Reg. 34,483 (July 2, 1996) ("SSR-96-7p")). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR-96-7p, 61 Fed. Reg. at 34,484. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements . . . are not substantiated by

9

objective medical evidence, the [ALJ] must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.* at 34,485.

In determining "a plaintiff's credibility concerning his pain" and other symptoms, the ALJ "must consider the following factors":

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Melendez*, 630 F. Supp. 2d at 318; *see also* 20 C.F.R. § 416.929(c)(3).

After considering those factors, and "weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility," the ALJ "may decide to discredit the claimant's subjective estimation of the degree of impairment." *Tejada v. Apfel*, 167 F.3d 770, 775–76 (2d Cir. 1999). But in doing so, "an ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Osorio v. Barnhart*, No. 04 Civ. 7515, 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006) (quoting SSR 96-7p, 61 Fed. Reg. at 34,484). "Conclusory findings of a lack of credibility will not suffice." *Id.*

"If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints." *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 759 (S.D.N.Y. 2018) (alteration in original) (citation omitted). But an ALJ's credibility determination may "be set aside if it is not set forth 'with sufficient

specificity to enable [a reviewing court] to decide whether [it] is supported by substantial evidence.'" *Osorio*, 2006 WL 1464193, at *6 (alternations in original) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

In this case, the ALJ decided to discount Liner's testimony and his description of his symptoms in making the factual findings regarding the existence of Liner's medical impairments and their severity. After surveying the medical evidence in the record, the ALJ found that Liner's "medically determinable impairments could reasonably be expected to produce [his] alleged symptoms." (R. 19.) But the ALJ concluded that Liner's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 19.)

The problem is that the ALJ never actually explained why he found Liner's statements to be "not entirely credible." (R. 19.) Instead, the ALJ merely noted at the outset that he "must make a finding on the credibility of the statements based on a consideration of the entire case record" (R. 17), and concluded at the end that Liner's statements must be discounted (R. 19). In between, the ALJ neglected to give any reasons to support his credibility determination. Indeed, apart from acknowledging the *existence* of a hearing (R. 14), the ALJ failed to mention the content of Liner's testimony or his demeanor in testifying.

In support of her motion for judgment on the pleadings, the Commissioner nevertheless argues that the ALJ properly considered Liner's subjective complaints and offers several justifications for the ALJ's credibility determination. (Dkt. No. 17 at 20–21.) But it is not sufficient for these justifications to be offered on judicial review; the ALJ's ruling itself "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Osorio*, 2006 WL 1464193, at *6.

11

Where, as here, an ALJ merely "perfunctorily" states that a claimant's allegations "were not totally credible 'for the reasons set forth in the body of the decision' . . . [t]he ALJ's ruling does not allow the court to assess the substantiality of the evidence upon which the determination is based." *Melendez*, 630 F. Supp. 2d at 318 (citation omitted). Nor can the Court be certain that the ALJ "appl[ied] the required factors" in evaluating the claimant's statements and credibility. *Id.*

Accordingly, the Court sets aside the ALJ's credibility determination and remands the matter to the ALJ so that he can provide a credibility analysis that complies with the applicable laws and regulations.

    **B.**    **Substantial Evidence to Support Severity Findings**

The ALJ ultimately determined that Liner was not under a disability, because Liner did not adequately demonstrate that he possessed any severe impairment or combination of impairments. (R. 16, 19.) In reaching that determination, the ALJ made factual findings regarding whether Liner had certain medical impairments, and whether those impairments significantly limited his ability to perform basic work-related activities for the requisite minimum duration. (R. 16.) The Commissioner now argues in support of her motion for judgment on the pleadings that the ALJ's severity findings were all supported by substantial evidence. (Dkt. No. 17 at 14–20.) The Court reads Liner's opposition to disagree and take the position that his chronic back pain, combined with other medical issues, qualify as sufficiently severe. (Dkt. No. 24 at 2.)

The Court need not address these arguments at this stage, however, in light of the problem with the ALJ's credibility determination. As explained above, the ALJ appears not to have considered any of Liner's subjective statements about his symptoms in making the factual findings. And the ALJ erred in failing to explain, with specificity, "the weight [he] gave the

12

claimant's statements and the reasons for that weight." *Melendez*, 630 F. Supp. 2d at 318 (alteration in original) (citation omitted). Because the Court is unable to properly evaluate the ALJ's credibility determination, it cannot assess whether the decision to disregard Liner's statements in making his severity findings was proper.

Furthermore, it is possible that, after a proper credibility analysis is undertaken, the ALJ may need to alter his findings that Liner's impairments do not sufficiently limit his ability to perform basic work-related activities for the requisite duration. Consideration of whether these findings are otherwise supported by substantial evidence is thus properly deferred until after the credibility-determination error has been corrected on remand, and the ALJ has had the opportunity to revisit his factual findings if necessary.

Without opining on the merits of the ALJ's severity findings, then, the Court merely observes that "the severity prong is intended as a de minimis standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Winder v. Berryhill*, 369 F. Supp. 3d 450, 455–56 (E.D.N.Y. 2019) (citation omitted); *see Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (noting that the severity test "may do no more than screen out *de minimis* claims").

### C. Other Objections

The Court understands Liner's opposition to raise two additional issues. First, Liner contends that the Administration failed to have him reviewed by a physician. (Dkt. No. 24 at 1.) But the record reveals that Dr. Graham conducted a consultative internal medicine examination of Liner on June 16, 2015. (R. 309.) Seeing no reason why a second examination should have been required, the Court rejects this argument.

Second, Liner contends that the ALJ failed to seek or review his medical records from the time he spent incarcerated. (Dkt. No. 24 at 1–2.) "[W]here there are deficiencies in the record,

an ALJ is under an affirmative obligation to develop a claimant's medical history . . . ." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (alteration in original) (quoting *Rosa*, 168 F.3d at 79). "However, 'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Id.* (internal quotation marks omitted) (quoting *Rosa*, 168 F.3d at 79 n.5). The relevant Social Security regulations define "complete medical history" to mean "the records of [claimant's] medical source(s) covering at least the 12 months preceding the month in which [claimant] file[d] his] application." 20 C.F.R. § 416.912(b)(1)(ii).

In this case, the ALJ developed the record to include over two years' worth of Liner's medical records from the time he was incarcerated, from February 2012 to April 2014 (*see* R. 165, 169), in addition to the records from after Liner's release. These records constitute a large portion of Liner's "complete medical history," covering ten of the twelve months before Liner's application for SSI was filed on June 23, 2014. (R. 14.) The ALJ put these medical records into the administrative record on which he based his decision (*see* R. 163–220), and specifically cited and relied on these records in his ruling (R. 17). Liner has pointed to no specific gaps in these records, or explained why his complete medical history should cover a period longer than the two years preceding his application for benefits. Accordingly, the Court holds that the ALJ did not err in failing to further develop the record.

Insofar as Liner's opposition affidavit requests that the Administration order an additional consultative exam and the ALJ be required to further develop the record with respect to Liner's medical history, Liner's motion is denied.

14

**IV.   Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED, and Liner's motion for judgment on the pleadings is GRANTED in part and DENIED in part.  Pursuant to 42 U.S.C. § 405(g), the case is remanded to the Commissioner for further proceedings consistent with this Opinion and Order.

The Clerk of Court is directed to close the motion at Docket Number 16, and to close this case.

SO ORDERED.

Dated: July 1, 2019
    New York, New York

_____
J. PAUL OETKEN
United States District Judge


*COPY MAILED TO PRO SE PARTY BY CHAMBERS*